# Exhibit A

 CT Corporation

**Service of Process Transmittal**
09/10/2021
CT Log Number 540220545

**TO:** Angela Aizawa
Verizon Communications Inc.
1 Verizon Way
Basking Ridge, NJ 07920-1097

**RE:** Process Served in Virginia

**FOR:** Verizon Virginia LLC  (Domestic State: VA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | BRG MERIDIAN PARKSIDE, LLC, a Virginia Limited Liability Company vs. VERIZON VIRGINIA LLC. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint |
| **COURT/AGENCY:** | Newport News Circuit Court, VA<br>Case # 700CL2104154T00 |
| **NATURE OF ACTION:** | COMPLAINT FOR A TEMPORARY INJUNCTION |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Glen Allen, VA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 09/10/2021 at 15:06 |
| **JURISDICTION SERVED :** | Virginia |
| **APPEARANCE OR ANSWER DUE:** | Within 21 days after such service |
| **ATTORNEY(S) / SENDER(S):** | Chip (John G.) Dicks<br>GENTRY LOCKE ATTORNEYS<br>919 East Main Street, Suite 1130<br>Richmond, VA 23219<br>804-297-3700 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 09/10/2021, Expected Purge Date: 09/15/2021<br><br>Image SOP<br><br>Email Notification,  Alice Burke  alice.burke@verizon.com<br><br>Email Notification,  Erin Tripodi  erin.tripodi@verizon.com<br><br>Email Notification,  David Haga  david.haga@verizon.com |
| **REGISTERED AGENT ADDRESS:** | CT Corporation System<br>4701 Cox Road<br>Suite 285<br>Glen Allen, VA 23060<br>877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

 CT Corporation

**Service of Process Transmittal**
09/10/2021
CT Log Number 540220545

**TO:**      Angela Aizawa
Verizon Communications Inc.
1 Verizon Way
Basking Ridge, NJ 07920-1097

**RE:**      **Process Served in Virginia**

**FOR:**     Verizon Virginia LLC  (Domestic State: VA)

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                          Fri, Sep 10, 2021

**Server Name:**                   Drop Service

| Entity Served | VERIZON VIRGINIA LLC |
|---|---|
| Case Number | 700CL2104154T00 |
| Jurisdiction | VA |



# COMMONWEALTH OF VIRGINIA



NEWPORT NEWS CIRCUIT COURT
Civil Division
2500 WASHINGTON AVENUE
NEWPORT NEWS  VA  23607-4355
(757) 926-8561

Summons

To: VERIZON VIRGINIA, LLC
CT CORPORATION SYSTEM
REGISTERED AGENT
4701 COX ROAD, SUITE 285
GLEN ALLEN VA 23060

Case No. 700CL2104154T-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Thursday, September 09, 2021

Clerk of Court: ANGELA F REASON

by _____
(CLERK/DEPUTY CLERK)

Instructions:     TEMPORARY INJUNCTION

Hearing Official:

Attorney's name:     RYAN J STARKS
804-956-2062

V I R G I N I A :

IN THE CIRCUIT COURT FOR NEWPORT NEWS

BRG MERIDIAN PARKSIDE, LLC,                    )
a Virginia Limited Liability Company,          )
                                               )
                    *Plaintiff,*               )
                                               )
v.                                             )     Civil Action No. *CL21041547-00*
                                               )
VERIZON VIRGINIA LLC.,                         )
a Virginia Limited Liability Company,          )
                                               )
       Serve:  C T Corporation System          )
               4701 Cox Road, Suite 285        )
               Glen Allen, Virginia 23060-6808 )
               **REGISTERED AGENT**            )
                                               )
                    *Defendant.*               )
_____)

## **COMPLAINT FOR A TEMPORARY INJUNCTION**

Plaintiff, BRG Meridian Parkside, LLC ("BRG"), by counsel, pursuant to §§ 8.01-620 and

8.01-184 of the Code of Virginia, files its Complaint moving for the entry of a temporary injunction

and declaratory relief against Defendant, Verizon Virginia LLC ("Verizon"):

## **PARTIES**

1.      BRG is a Virginia limited liability company with its principal office located at 209

Madison Street, Alexandria, Virginia 22314.   BRG is the owner of the Meridian Parkside

Apartments ("Meridian Parkside"), an apartment, or multiple dwelling unit ("MDU") building

located at 1400 Summit Lane, Newport News, Virginia 23601.   In 2020, BRG contracted with

Virginia SkyWire ("SkyWire") to install all fiber optic infrastructure necessary to deliver SkyWire

cable services to tenants at Meridian Parkside (the "Alternative Cabling").

2.      Verizon is a Virginia limited liability company with its principal office located at 22001 Loudon County Parkway, Ashburn, Virginia, 20147.  Verizon provides fiber optic cable services to some tenants at Meridian Parkside.

3.      Verizon has threatened to enter the Meridian Parkside property and interfere with, disconnect, and/or remove the Alternative Cabling in a way that would adversely affect many tenants at Meridian Parkside who have opted to use fiber optic cable services provided by SkyWire. Verizon has also threatened to prevent SkyWire from accessing the critical fiber optic infrastructure necessary to service BRG's residents, and SkyWire customers, at Meridian Parkside.

4.      BRG seeks injunctive and declarative relief providing that Verizon is not entitled either to: (i) interfere with, disconnect, or remove any of the Alternative Cabling, or (ii) block or otherwise prevent or prohibit BRG, and its vendor SkyWire, from accessing the fiber optic infrastructure necessary to service BRG's residents, and SkyWire customers, at Meridian Parkside.

## FACTS

5.      From at least September 2016 to 2020, Verizon was the sole provider of fiber optic cable services at Meridian Parkside.

6.      Each unit at Meridian Parkside is wired with one fiber optic cable, that runs from a structured media enclosure ("SME") located in the unit's bedroom closet, to a junction box that is affixed to the outside of the building. The junction box, where every unit's fiber optic cable terminates (and is, therefore, accessible), is owned by Verizon (the "Junction Box").

7.      Each unit's fiber optic cable is housed inside of a "microduct" that travels alongside the Meridian Parkside's in-wall wiring behind sheet rock and other structural materials.

8.      Each unit's fiber optic cable is physically inaccessible from any point between the SME inside the unit, and the Junction Box affixed to the outside of the building.  In order to access

the fiber optic cable at any point between the SME inside the unit and the Junction Box, a cable service provider would need to remove, alter, or destroy sheet rock and other structural materials in the common areas at Meridian Parkside.

9.     In 2020, BRG entered into a contract with SkyWire to provide bulk telecom and cable services for Meridian Parkside residents at a cost of approximately $266,000.00 to BRG. The cost for SkyWire's services is included in tenants' rent and it is up to each individual tenant to elect to use either Verizon or SkyWire as their cable service provider. Prior to BRG contracting with SkyWire, Meridian Parkside tenants were limited to Verizon services.

10.     In accordance with that contract, SkyWire installed the Alternative Cabling, which extends from the street to the Junction Box, the closest practicable point to access the "cable home wiring" for each unit at Meridian Parkside.

11.     Verizon also maintains a separate underground fiber optic cable that extends from the street to the Junction Box.

12.     Although the Alternative Cabling terminates inside of the Junction Box, Verizon's fiber optic infrastructure, including that infrastructure located inside the Junction Box, remains unaffected.  Instead, when a Meridian Parkside resident gives notice to Verizon that they are terminating cable service with Verizon, and subsequently begins cable service with SkyWire, SkyWire merely disconnects the single tenant's (or single unit's) "cable home wiring" from Verizon's underground fiber optic cable, and connects it to the Alternative Cabling, which is used to service BRG's residents, and SkyWire customers, located inside the Junction Box.

13.     Verizon wrongfully asserts that the mere existence of the Alternative Cabling inside of the Junction Box is "illegal" and, as a result, has threatened to disconnect the "cable home

wiring" that leads to the apartment homes of BRG's residents, and SkyWire customers, and remove the Alternative Cabling infrastructure, altogether, from inside the Junction Box.

14.    Removing the Alternative Cabling from the Junction Box and blocking SkyWire from accessing the critical fiber optic infrastructure and "cable home wiring" located inside of the Junction Box, as Verizon has threatened to do, directly harms competition because it prevents SkyWire from servicing Meridian Parkside residents who desire to get their service from SkyWire instead of Verizon.

15.    Removing the Alternative Cabling from the Junction Box, and blocking SkyWire from accessing the critical fiber optic infrastructure and "cable home wiring" located inside of the Junction Box, as Verizon has threatened to do, directly harms BRG's residents, because any resident who terminated Verizon's cable service in favor of SkyWire's will no longer have, or be able to, access SkyWire's cable services.

16.    Verizon's threats and proposed actions are contrary to the well-established regulatory framework governing cable service providers established by the Federal Communications Commission.

17.    Verizon's threats and proposed actions are also contrary to the laudable public interest goals of the Federal Communications Commission, to encourage competition between cable service providers and expand consumer access.

18.    Accordingly, BRG seeks injunctive and declaratory relief providing that Verizon is not entitled either to: (i) interfere with, disconnect, or remove any of the Alternative Cabling, or (ii) block or otherwise prevent or prohibit SkyWire from accessing the fiber optic infrastructure necessary to service BRG's residents, and SkyWire customers, at Meridian Parkside.

## LEGAL ARGUMENT

19.     "[T]he granting of a [preliminary] injunction is an extraordinary remedy and rests on the sound judicial discretion to be exercised upon consideration of the nature and circumstances of a particular case." *Levisa Coal Co. v. Consolidated Coal Co.*, 276 Va. 44, 60, 662 S.E.2d 44, 53 (2008). "This form of preliminary relief "allows a court to preserve the status quo between the parties while litigation is ongoing.'" *Dillon v. Northam*, 105 Va. Cir. 402, 408 (Norfolk Cnty. 2020). Although the Virginia Supreme Court has not yet articulated a standard for awarding a preliminary (or temporary) injunction, Virginia circuit courts evaluate requests for preliminary injunctions using the sequential analysis adopted by the Fourth Circuit in *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342 (4th Cir. 2009). *See id.* at 409 (citing cases).

20.     A plaintiff seeking a preliminary injunction must establish: (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *The Real Truth About Obama, Inc.*, 575 F.3d at 346-47 (adopting the injunction standard articulated by the U.S. Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)).

## I.     BRG IS LIKELY TO SUCCEED ON THE MERITS

21.     Verizon's threat to remove the Alternative Cabling from the Junction Box, and to prevent SkyWire from accessing the wiring and fiber optic infrastructure at the demarcation point (defined below) inside of the Junction Box, is in violation of established law and an affront to years of regulation carefully drafted to promote competition between cable service providers and to expand consumer choice.

22.     In 1997, the Federal Communications Commission ("FCC") established new procedures for the disposition of cable wiring in MDUs when an MDU owner (*e.g.*, BRG) decides to terminate service for the entire building or, as is the case here, when an MDU owner is willing to permit two or more video service providers (*e.g.*, Verizon and SkyWire) to compete for resident-subscribers in the MDU on a unit-by-unit basis. *Telecommunications Services Inside Wiring, Customer Premises Equipment and Implementation of the Cable Television Consumer Protection and Competition Act of 1992: Cable Home Wiring*, Report and Order and Second Further Notice of Proposed Rulemaking, 13 FCC Rcd 3659 (1997) (Report and Order and Second Further Notice).

23.     As a result, cable wiring in MDUs was divided into two categories: "cable home wiring" and "home run wiring."

24.     "Cable home wiring" is "[t]he internal wiring contained within the premises of a subscriber which begins at the demarcation point." 47 C.F.R. 76.5(ll). This is the wiring that extends from the resident's television set to the "demarcation point."

25.     "Home run wiring" is "[t]he wiring from the demarcation point to the point at which the [multichannel video programming distributor's] wiring becomes devoted to an individual subscriber or individual loop. This is the wiring that extends from the "demarcation point" to the MDU box, which might be located on the outside of the building, where the wiring becomes dedicated to an individual unit with the building.

26.     The FCC defines the cable "demarcation point" as "a point at (or about) twelve inches outside of where the cable wire enters the subscriber's dwelling unit, **or, where the wire is physically inaccessible at such point, the closest practicable point thereto that does not require access to the individual subscriber's dwelling unit.**" 47 C.F.R. 76.5(mm)(2) (emphasis added).



27.     When a resident-subscriber in an MDU voluntarily terminates cable service, that cable provider is prohibited from removing the "cable home wiring" unless: the cable provider gives the resident-subscriber the option to purchase the wiring at the replacement cost; the resident-subscriber declines to purchase the wiring, and neither the MDU owner nor an alternative cable provider, where permitted by the MDU owner, has provided reasonable advance notice to the incumbent cable provider that it would purchase the cable home wiring after the resident-subscriber declines.  47 C.F.R. 76.802(a)(2).  "If the cable system operator is entitled to remove the cable home wiring, it must then remove the wiring within seven days of the subscriber's decision, under normal operating conditions, or make no subsequent attempt to remove it or to restrict its use."  *Id.*

28.     Importantly, "[c]able operators are prohibited from using any ownership interests they may have in property located on the subscriber's side of the demarcation point, such as molding or conduit, to prevent, impede, or in any way interfere with, a subscriber's right to use his or her home wiring to receive an alternative service.  In addition, incumbent cable operators must take reasonable steps within their control to ensure that an alternative service provider has access to the home wiring at the demarcation point."  47 C.F.R. 76.802(j).

29.     In effect, "cable home wiring" that is not removed by the incumbent cable provider within seven days after the resident-subscriber's voluntary termination of the incumbent cable service, is deemed abandoned to the subscriber.  *See* 47 C.F.R. 76.802(a)(2). Then, the terminating resident-subscriber may authorize an alternative cable provider to connect to the "cable home

wiring" at the "demarcation point," and the incumbent cable provider has an affirmative obligation to facilitate the alternative provider's access to the wiring at the "demarcation point." *See* 47 C.F.R. 76.802(j).[1]

30.    In 2007, the FCC convened to revisit its inside wiring rules, partially in response to the near-blanket refusal of MDU owners to allow competitive (alternative) cable providers to cut into sheet rock walls to access "demarcation points" located in the halls outside of residents' apartment homes. *See generally* Report and Order and Declaratory Ruling Adopted May 31, 2007, FCC 07-111.

31.    The FCC recognized the damage and expense that came with cable providers boring holes in MDU common areas to access those "demarcation points," and the resulting anticompetitive effects of MDU owners' reasonable prohibition on the destruction of their common areas (*i.e.*, that incumbent providers would effectively enjoy a service monopoly for apartment buildings just because building owners did not want to have their walls torn up). Recognizing that such an anticompetitive result was directly contrary to the entire regulatory regime, the FCC concluded "that cable wiring located behind sheet rock qualifies as physically inaccessible under our rules for purposes of determining the demarcation point between home wiring and home run wiring." *Id.* at 27.

32.    As a result of the FCC's 2007 Order (the "Sheet Rock Order"), if a "demarcation point" at or about twelve inches outside of where the cable wire enters the subscriber's dwelling unit is situated behind a sheet rock wall, the "demarcation point" is "moved" to "the closest practicable point thereto that does not require access to the individual subscriber's dwelling unit."

---

[1] The procedures for disposition of "home run wiring," codified at 47 C.F.R. 76.804, are more complex than those for disposition of "cable home wiring," but, as explained in ¶¶ 30-34, are inapplicable here.

47 C.F.R. 76.5(mm)(2). The Sheet Rock Order further held that "the closest practicable point" could end up being inside the incumbent cable provider-owned junction box at or near a multiunit customer premises. Report and Order and Declaratory Ruling Adopted May 31, 2007, FCC 07-111, at 24.

    33.    The effect of the Sheet Rock Order, in a scenario where the "closest practicable point" is the incumbent cable provider's junction box, is that the "demarcation point" is the incumbent cable provider's the junction box. And because "cable home wiring" is the wiring that extends from the resident's television set to the "demarcation point," the entire length of the wire that extends from the "demarcation point" – located in the incumbent cable provider's junction box – to the resident's television is "cable home wiring" (and there is no "home run wiring") pursuant to the definitions and regulatory framework established by the FCC.



    34.    Because the demarcation point is the Junction Box in this situation – precisely as contemplated by the FCC's Sheet Rock Order – there is only "home wiring" and, therefore, 47 C.F.R. 76.802 governs the procedure for subscribers terminating their Verizon service.

35.     After BRG entered into a contract with SkyWire in 2020, some Meridian Parkside residents began voluntarily terminating their existing cable service with the incumbent cable provider, Verizon.

36.     Assuming *arguendo* that Verizon owned the wiring as it has asserted it does, and further assuming Verizon complied with its legal obligations when those residents voluntarily terminated their existing cable service, Verizon would have informed them: "(1) That the cable operator owns the home wiring; That the cable operator intends to remove the home wiring; That the subscriber has the right to purchase the home wiring; and What the per-foot replacement cost and total charge for the wiring would be [. . .]" in accordance with 47 C.F.R. 76.802(b).

37.     Upon information and belief, no resident who voluntarily terminated his or her existing cable service with the incumbent cable provider Verizon, opted to purchase the wiring, and neither BRG, nor an alternative cable provider, purchased the cable home wiring from Verizon upon a subscriber termination.

38.     Verizon has failed to remove the cable home wiring within seven days of the resident-subscribers' termination without purchase.   Accordingly, Verizon is not entitled to remove the cable home wiring that extends from each unit at Meridian Parkside to the Junction Box. *See* 47 C.F.R. 76.802(a)(2).  Therefore, Verizon can "make no subsequent attempt to remove it or to restrict its use." *Id.*

39.     Likewise, contrary to Verizon's stated belief, SkyWire, as an alternative service provider, is entitled to access the wiring inside of incumbent cable provider Verizon's Junction Box, as that is "closest practicable point" pursuant to 47 C.F.R. 76.5(mm)(2) and the Sheet Rock Order.

40.    Verizon's recent attempts to impede, threaten, and otherwise block access to that "demarcation point," by disconnecting the customers that desire to be and are connected to SkyWire, or by otherwise interfering with or removing the Alternative Cabling and any other critical fiber optic infrastructure necessary to service BRG's residents, and SkyWire customers at Meridian Parkside, are in violation of the established laws and regulations which place an affirmative duty on Verizon to "take reasonable steps within [its] control to ensure that [SkyWire] has access to the home wiring at the demarcation point [(*e.g.*, the Junction Box)]." 47 C.F.R. 76.802(j).

## II.    BRG IS LIKELY TO SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY INJUNCTIVE RELIEF

41.    Should Verizon move forward with its threats to interfere with, disconnect, and/or remove the Alternative Cabling, and block access to the critical fiber optic infrastructure necessary to service BRG's residents, and SkyWire customers, at Meridian Parkside, there is no doubt that BRG will suffer immediate, unavoidable and irreparable harm.  In addition, it is clear that BRG has no adequate remedy at law.  *Black & White Cars, Inc. v. Groome Transp.*, 247 Va. 426, 442 (1994); *HotJobs.com v. Digital City, Inc.*, 53 Va. Cir. 36, 45 (Fairfax Cnty. 2000) ("There is substantial support in Virginia for the proposition that irreparable harm is sustained, and injunctive relief appropriate, when it would be difficult or impossible to quantify monetary damages with precision.").

42.    For one, Meridian Parkside residents who opted to utilize SkyWire services will lose access to those services.  Sudden loss of access will adversely affect the lives and livelihoods of nearly 70 Meridian Parkside residents who rely on SkyWire services day in and day out for entertainment, work, and school (especially on the heels of the global Coronavirus Pandemic).

43.     If SkyWire is forced to connect to the critical fiber optic infrastructure at a non-existent "demarcation point" between the resident-subscribers' units and the Junction Box, SkyWire will cause extensive modification of, or significant damage to, the sheet rock in the common areas of the Meridian Parkside. *See* Report and Order and Declaratory Ruling Adopted May 31, 2007, FCC 07-111, at 10 ("When characterizing the modification of or damage done to sheet rock in efforts to access inside wiring, the majority of commenters agree that the modification of or damage done is significant."). In this regard, the damage to BRG, and the Meridian Parkside, is unquantifiable when considering the damage and destruction necessary to bore numerous holes in common area walls, on an on-going basis (whenever a subscriber wants to switch providers), and the potential displacement of current and prospective tenants as a result.

44.     Finally, the sudden loss of SkyWire cable services as a result of Verizon's threatened acts will cause BRG to be in violation of its rental agreement with, and lose the good will of, the numerous resident-subscribers who transitioned from Verizon, as the incumbent cable provider, to SkyWire since 2020 when BRG announced its contract with SkyWire, as an alternative cable services provider.

45.     The harm to BRG is imminent, and not merely speculative or potential. Indeed, Verizon has threatened to immediately disconnect the wires connecting BRG's residents, and SkyWire's customers, at the Meridian Parkside.

46.     For those reasons, BRG will suffer irreparable harm in the absence of preliminary injunctive and declaratory relief from this Court. *See Ridgwell v. Brasco Bay Corp.*, 254 Va. 458, 462-63, 493 S.E.2d 123 (1997).

III.   **THE BALANCE OF THE EQUITIES TIPS IN BRG'S FAVOR**

47.   The harm that BRG will suffer without preliminary injunctive and declarative relief outweighs any theoretical harm to Verizon should this court grant BRG's request.

48.   As explained above, BRG undertook the cost and expense to run its own, brand new fiber optic infrastructure from the street to the Junction Box installed on the side of the Meridian Parkside, wholly avoiding Verizon's infrastructure (and Verizon has not alleged any interference with that portion of the infrastructure).

49.   The fact that the Alternative Cabling merely sits inside the Junction Box does not interfere in any way with Verizon's fiber optic infrastructure inside of the Junction Box; indeed, it is not at all uncommon for providers to share fiber optic infrastructure located inside junction boxes at MDUs in precisely this situation.

50.   Even when a resident chooses to terminate cable service with Verizon, and commence cable service with SkyWire, SkyWire merely disconnects the single resident's (or single unit's) cable home wiring from Verizon's fiber optic line, and connects the single resident's (or single unit's) cable home wiring to the Alternative Cabling, leaving all of Verizon's fiber optic infrastructure in place with no damage thereto.

51.   Should a new resident choose to terminate cable service with SkyWire and reengage Verizon, the single resident's (or unit's) cable home wiring would merely need to be "switched" back.  On the other hand, if the Alternative Cabling is removed from the Junction Box, residents are forever barred from using SkyWire or any other alternative cable service provider. Injunctive relief is necessary to remedy that gross inequity.

52.   That Verizon may lose customers due to competition from an alternative service provider is not a cognizable harm; rather, promotion of competition and consumer choice are key

goals of the regulatory regime established by the FCC.   Thus, the balance of the equities tips in BRG's favor since the only "harm" suffered by Verizon is its inability to monopolize cable services at the Meridian Parkside apartments.

53.   Absent injunctive and declarative relief, BRG will be placed at a significant competitive disadvantage with neighboring MDUs who are capable of offering more than one cable service to their rsidents.

54.   In sum, the "harm" to Verizon is *de minimis*, while the harm to BRG is real and costly.   Accordingly, the balance of the equities tip in BRG's favor.

## IV.   AN INJUNCTION IN THE PUBLIC INTEREST

55.   As stated by the FCC, the Sheet Rock Order "takes important steps to ensure that the pro-competitive deregulatory goals of the [Telecommunications Act of 1996] are realized." Report and Order and Declaratory Ruling Adopted May 31, 2007, FCC 07-111, at 2.  Furthermore, "[the FCC's] actions here remove both economic and operational barriers to infrastructure investment in the communications market.  New entrants to the video services and telephony markets should not be foreclosed from competing for consumers in multi-unit buildings based on regulatory technicalities or costly and inefficient industry practices.  By removing these obstacles, we further the opportunities for consumers living in multi-unit buildings to enjoy the social and economic benefits of communication services competition." *Id.*

56.   In response to the FCC's request for notice and comment when implementing the Sheet Rock Rule, Verizon itself argued "that meaningful competition for cable services for millions of Americans living in MDUs is inhibited because MDU owners and residents consider cutting and repairing sheet rock a significant inconvenience and new entrants are placed at a competitive disadvantage." *Id.* at 15.

57.   In its Sheet Rock Ruling, the FCC wrote that "any decision that does not allow [competitors to have direct access to a "point of technically feasible access" inside of an incumbent cable services provider's junction box is] contrary to the Commission's rules and policy of promoting telephone and broadband competition." *Id.* at 22-23.

58.   It is abundantly clear that a preliminary injunction, which would ensure that SkyWire has equal access to the cable home wiring at Meridian Parkside and foster competition between cable service providers and expand consumer choice, is in the public interest.

WHEREFORE, BRG respectfully requests that the Court:

(a)   Enter an injunction prohibiting Verizon from (i) interfering with, disconnecting, or removing any of the fiber optic infrastructure, including the Alternative Cabling, from the Junction Box;, or (ii) blocking or otherwise preventing or prohibiting BRG, and its vendor SkyWire, from accessing the fiber optic infrastructure necessary to service BRG's residents and SkyWire customers at Meridian Parkside;

(b)   Grant a declaratory judgment establishing that BRG, and its vendor SkyWire, may access the cable wiring located inside of the Junction Box and, upon a resident's termination of service with the incumbent provider, BRG, and its vendor SkyWire, may connect the customer to the Alternative Cabling and any other infrastructure necessary to provide cable services to that customer.

(c)   Award BRG such other and further relief as the Court deems just and equitable.

Dated: September 8, 2021

Respectfully submitted,

**BRG MERIDIAN PARKSIDE, LLC**

By: _____

*Counsel*

Chip (John G.) Dicks, Esq. (VSB No. 16883)
Karen L. Cohen, Esq. (VSB No. 37527)
Ryan J. Starks (VSB No. 93068)
GENTRY LOCKE ATTORNEYS
919 East Main Street, Suite 1130
Richmond, Virginia 23219
Tel:   (804) 297-3700
Fax:   (540) 983-9400
chipdicks@gentrylocke.com
cohen@gentrylocke.com
starks@gentrylocke.com